UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br>JAY JEFFREY REGAS,<br><br>　　　　　　　　　　Defendant. | Case No. 3:91-cr-00057-MMD-NA-1<br><br>ORDER |

**I.　SUMMARY**

Defendant Jay Jeffrey Regas is currently serving a life sentence at Federal Correctional Institution Herlong ("Herlong") for Continuing Criminal Enterprise, 21 U.S.C. § 848, following a jury conviction. (ECF No. 1823 at 6; ECF No. 1827 at 2, 20.) Before the Court is Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on the "extraordinary and compelling reasons" presented by the COVID-19 pandemic[1] as applied to his advanced age and vulnerability.[2] (ECF No. 1823 (the "Motion").) The Court agrees with Defendant that the 18 U.S.C. § 3553(a) sentencing factors weigh in favor of releasing him. The Court will grant Defendant's Motion.

**II.　BACKGROUND**

On June 21, 1994, a jury found Defendant guilty of multiple drug-related offenses and tax violations, spanning from 1982 to 1993 over multiple states.[3] (ECF No. 1827 at

---

[1]The Court issues this order during the COVID-19 pandemic, as a novel coronavirus is killing many people around the world, and many governments, including the governments of the United States and Nevada, have at least partially shut down their societies and economies in response.

[2]The government opposes his release. (ECF No. 1827.) Defendant also filed a reply in support of his Motion. (ECF No. 1828.)

[3]These offenses specifically include Continuing Criminal Enterprise (21 U.S.C. § 848); Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute Cocaine

2-3.) Because the jury found Defendant guilty of Continuing Criminal Enterprise during that period, Defendant was sentenced to life in custody of the United States Bureau of Prisons ("BOP") on February 10, 1995. (*Id.* at 3.) Defendant has been in custody since February 3, 1993. (ECF No. 1823 at 6.)

Defendant is now 77 years old and has served his sentence for the past 27 years with a perfect disciplinary record. (*Id.* at 6 (citing to ECF Nos. 1823-1, 1823-2).) The BOP has determined that Defendant is a minimal risk for future recidivism. (ECF No. 1823-1.) He has also taken an array of classes offered in prison over the years. (ECF No. 1823-3).)

When the BOP instituted a nationwide lockdown on March 24, 2020 in response to COVID-19 (ECF No. 1823 at 19 n.29), Defense counsel sent the BOP a request to consider Defendant for early release or home confinement, which the BOP rejected (ECF No. 1823-1). To protect Defendant from contracting COVID-19, BOP has placed Defendant in solitary confinement for the indefinite future and leaves his cell for only one-and-a-half hour a day. (ECF No. 1823 at 2-3, 15.) Defendant does not have access to programming, cannot see his family due to Herlong being on lockdown, and his meals are brought to his solitary cell. (*Id.* at 15-16.)

**III.   LEGAL STANDARD**

Defendant specifically seeks release under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act ("FSA") of 2018. (ECF No. 1823 at 3, 7.) This provision offers Defendant a limited exception to the general rule that the Court may not modify or reduce the length of a sentence after the Court has imposed it. *See* 18 U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (explaining that generally a court cannot modify a sentence after it has imposed it).

---

and Methamphetamine (*id.* at § 846); Possession with Intent to Distribute Cocaine and Methamphetamine (*id.* at § 841(a)(1)); Establishment of a Manufacturing Operation (*id.* at §§ 856(a)(1) & (2)); Income Tax Evasion (26 U.S.C. § 7201); and Filing False Income Tax returns (*id.* at § 7206(1)). (ECF No. 1479 (Judgment).) The government especially notes that Defendant directed the kidnapping and beating of a drug distributor to collect an outstanding drug debt owed to Defendant. (ECF No. 1827 at 2.)

"It allows the sentencing judge to reduce a sentence based on 'extraordinary and compelling reasons' after the defendant has asked the BOP to bring such a motion on her behalf and exhausted all administrative rights to appeal the BOP's denial of that request." *United States v. Mogavero*, Case No. 2:15-cr-74-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). Moreover, before granting such a request, the Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent that they are applicable,' and any sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citations omitted).

## IV. DISCUSSION

The Court follows a three-step process to evaluate the Motion. The Court first addresses whether Defendant has satisfied the statutory prerequisites under Section 3582(c)(1)(A), then whether Defendant has shown "extraordinary and compelling reasons" for the Court to release him under Section 3582(c)(1)(A)(i), and then addresses the applicable policy statements and sentencing factors, as it must under Section 3582(c)(1)(A). To reiterate, the Court will grant Defendant's Motion.

### A. Statutory Prerequisites

Section 3582(c)(1)(A) requires that a defendant ask the BOP to bring a motion for compassionate release on the defendant's behalf before filing such a motion with the court, normally done—as here—by submitting a request to the warden. (*See* ECF No. 1823-1 at 2.) *See also* 18 U.S.C. § 3582(c)(1)(A). In addition, a defendant may only bring a motion under Section 3582(c)(1)(A) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.*

Although the BOP responded to Defendant's request for sentence reduction, the government argues that Defendant has not fully exhausted his administrative rights to appeal. (ECF No. 1827 at 6.) Defendant counters that any attempt at further pursuing an

administrative remedy would be futile because, although he has served 27 years, the BOP requires *inter alia* that Defendant serve 30 years to qualify for compassionate release. (*Id.* at 10; *see also* ECF No. 1827-1 at 2 (citing to Program Statement 5050.50).) The Court agrees with Defendant. Defendant has effectively exhausted his administrative remedies because the BOP has already determined his ineligibility for compassionate release. *United States v. McGreggor*, Case No. 2:18-cv-244-JCM-DJA, 2020 WL 2308081, at *3 (D. Nev. May 8, 2020) (holding that defendant exhausted his administrative remedies because the BOP rejected his request and already determined he was ineligible for release). Given the rapidly evolving circumstances surrounding the current pandemic, the Court finds that "[a]ny further delay is needless and contrary to the interests of justice." *Id.* at *2-3.

### B. Extraordinary and Compelling Reasons

Having found Defendant satisfied the statutory prerequisites, the Court moves on to the merits of Defendant's compassionate release request.

Defendant contends that his advanced age and vulnerability to COVID-19 complications are compelling and extraordinary. (ECF No. 1823 at 9; ECF No. 1828 at 17.) Indeed, it is well known that certain populations—such as people 65 years and older—are particularly at risk of severe illness from the virus. *See, e.g., United States v. Gorai*, Case No. 2:18-cr-220-JCM-CWH, 2020 WL 1975372, at *1 (D. Nev. Apr. 24, 2020) (citing to Center for Disease Control, People Who Are at Higher Risk for Severe Illness, (April 2, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed May 29, 2020) (the "CDC Guidelines")). Defendant is 77 years old and is therefore at high risk for severe illness under the CDC Guidelines.

Rather than dispute this, the government instead argues that Defendant's risk of contracting the virus is speculative. (ECF No. 1828 at 13-14.) The government points out that: (1) there are no confirmed COVID-19 cases in Herlong; (2) facility staff and newly admitted inmates are screened for symptoms; (3) inmates are afforded "[o]nly limited

4

group gathering[s]" to "laundry, showers, telephone, and computer access"; and (4) Plaintiff is in solitary confinement. (ECF No. 1827 at 18-20.)

But there remains a significant risk of infection to Defendant in light of his age and vulnerability. The fact that there are no confirmed COVID-19 cases at Herlong is not reassuring, given that there is no facility-wide testing being done there to separate those with COVID-19 from those who do not. (*See* ECF No. 1823 at 2, 7; ECF No. 1823 at 22-24 (arguing that the lack of testing results in underreporting of COVID-19).)[4] Although the Court commends the BOP for taking additional screening measures to detect COVID-19 symptoms (ECF No. 1827 at 18-20), these practices cannot detect infected but asymptomatic individuals (ECF No. 1823 at 18). The risk of spreading the disease is further compounded by the fact that prison staff continue to circulate in and out of the facility everyday. (*Id.* at 16.) The BOP presumably recognizes these risks and has therefore placed Defendant in solitary confinement as a precaution. But that does not eliminate the risks Defendant faces when he enters shared spaces, such as showers and phone blocks, where COVID-19 can survive on the surface for days and remain in the air for hours.[5] (*See* ECF No. 1823 at 17; ECF No. 1828 at 16.) "[L]imited group gathering[s]" do not eliminate the lingering presence of COVID-19 from these shared spaces. (ECF No. 1827 at 18-19.)

More importantly, the Court finds that placing Defendant in solitary confinement for the indefinite future to protect him from contracting COVID-19 is a severe and extreme

---

[4]"[T]esting inside prisons has been scant except for people who self-report symptoms—which means that statistics about the number of infections already in BOP facilities are largely meaningless." *United States v. Gorai*, Case No. 2:18-cr-220-JCM-CWH, 2020 WL 1975372, at *2 (D. Nev. Apr. 24, 2020) (citation and internal quotes omitted); *see also United States v. Atkinson*, Case No. 2:19-cr-55 JCM (CWH), 2020 WL 1904585, at *2 (D. Nev. Apr. 17, 2020) (rejecting the government's argument that there have been no confirmed COVID-19 cases at FCP Atwater and emphasizing that there is a rapid rise in infection cases across the nation and a number of penological facilities). (*See also* ECF No. 1827 at 18-19.)

[5]Mary Van Beusekom, *U.S. studies offer clues to COVID-19 swift spread, severity*, Cntr. for Infectious Disease Research & Policy (Mar. 18, 2020) (available at: https://bit.ly/3b9fk70).

measure under these circumstances. Defendant is isolated in his cell for 22.5 hours a day, despite his elderly age and good behavior over the past 27 years in prison. (ECF Nos. 1823-1, 1823-2, 1823-3.)

In sum, the Court finds that there exist extraordinary and compelling reasons for granting the Motion.

### C.   Applicable Policy Statements

Under the FSA, any sentence reduction for "extraordinary and compelling circumstances" must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Before the FSA's passage, the Sentencing Commission issued a policy statement (U.S.S.G. § 1B1.13 at cmt. 1 (the "Policy Statement")) that limited "extraordinary and compelling reasons" to four scenarios, none of which apply here.[6] *U.S.A. v. Defendant(s)*, Case No. 2:99-cr-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020). And the parties disagree on whether the Court is limited to considering conditions outlined in the Policy Statement. (*See* ECF No. 1823 at 5; ECF No. 1827 at 15-18.)

The Court finds that its discretion is not so limited. The FSA enacted major criminal justice reforms, which the Policy Statement did not address. *See United States v. Arreola-Bretado*, Case No. 3:19-cr-03410-BTM, 2020 WL 2535049, at *2 (S.D. Cal. May 15, 2020). Although the FSA directed the Sentencing Commission to promulgate a criterion to be applied and a list of specific "extraordinary and compelling examples" consistent

---

[6]The Policy Statement identifies only four qualifying conditions: (1) a serious medical condition (i.e., that the defendant is either "suffering from a terminal illness" or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care" in prison); (2) the defendant's age in combination with a medical condition (i.e., that the defendant is at least 65 years old, is experiencing deteriorating health, and has served a substantial portion of her sentence); (3) certain family circumstances (e.g., the incapacitation of a spouse); or (4) some other reason "determined by the Director of the [BOP]." *See* U.S.S.G. § 1B1.13 at cmt. 1. None of these conditions apply here because, although Defendant is 77 years old, he does not suffer from any other illness or medical condition (*see generally* ECF No. 1824), nor does he base the Motion on any family circumstances.

6

with the intent of the FSA, the Commission has not done so. *Defendant(s)*, 2020 WL 1864906, at *5. Courts found themselves in a conundrum trying to reconcile an outdated Policy Statement and the fact that the FSA was meant to increase the use of compassionate release. *Id.* As a result, some district courts have ruled that they can consider circumstances constituting "extraordinary and compelling" beyond the four conditions outlined in the Policy Statement. *Id.* (listing cases); *see also United States v. Arreola-Bretado*, Case No. 3:19-cr-03410-BTM, 2020 WL 2535049, at *2 (S.D. Cal. May 15, 2020); *United States v. Kesoyan,* Case No. 2:15-cr-236-JAM, 2020 WL 2039028, at *4 (E.D. Cal. Apr. 28, 2020); *United States v. Rodriguez,* 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019). The Court agrees with these decisions and finds that the government's argument to the contrary (ECF No. 1827 at 15-18) to be without merit.

### D.     Section 3553(a) Factors

The Court must next consider the factors set forth in Section 3553(a) to the extent they are applicable. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission[7]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7).

Relying on the first two factors, the government argues that the Court should deny the Motion in light of the seriousness of Defendant's criminal conviction (Section

---

[7] Because the Sentencing Commission never released guidelines with respect to compassionate release under the FSA, Section 3553(a)(5)'s pertinent policy statement factor is neutral. *United States v. Parker*, Case No. 2:98-cr-00749-CAS-1, 2020 WL 2572525, at *13 (C.D. Cal. May 21, 2020).

7

3553(a)(1)) and the need to protect the public and provide just punishment (Section 3553(a)(2)).[8] (ECF No. 1827 at 21.) But the Court is not persuaded.

While the Court agrees that the nature and circumstances of Defendant's underlying offenses are serious, evidence of Defendant's post-sentencing rehabilitation favors sentencing reduction. *See Parker*, 2020 WL 2572525, at \*11 (citing to *Pepper v. United States*, 562 U.S. 476, 491 (2011)) ("[E]vidence of post[-]sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'"). Defendant has shown that he has no disciplinary write-up during his entire 27 years of incarceration (ECF No. 1823-2) and that he has taken advantage of the educational opportunities available (ECF No. 1823-3). *See Parker*, 2020 WL 2572525, at \*11 (holding that defendant's jobs, educational achievements, and lack of disciplinary incident over the 22 years in prison demonstrates rehabilitation favoring a sentence reduction). In fact, the BOP determined that Defendant is a minimal risk for future recidivism (ECF No. 1823-1), further evidencing Defendant's rehabilitation.

As to Defendant's characteristics, the Court may consider his "character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse." *Parker*, 2020 WL 2572525, at \*12 (citation and internal quotes omitted). Although it is true that he was previously sentenced to two separate felonies in 1969 and 1974 (ECF No. 1827 at 3), Defendant's criminal history is stale, especially in light of his rehabilitation and model behavior over the past 27 years. Moreover, Defendant's three adult kids and his ex-wife each have a room in their four homes and have offered to quarantine Defendant and care for him, which will ease his transition back into society. (ECF No. 1823 at 27; ECF No. 1828-1.) *See Parker*, 2020 WL 2572525, at \*12 (holding that defendant's numerous family ties, including those

---

[8]The government also argues that Defendant's risk of contracting COVID-19 is speculative, and he has no medical condition that places him at heightened risk due to COVID-19. (*Id.*) The Court already rejected the government's first argument in Section (IV)(B), *supra*. Furthermore, the Court finds that it is immaterial that Defendant has no medical condition because his elderly age still renders him at risk of severe illness from the virus. *See Gorai*, 2020 WL 1975372, at \*1.

8

who are willing to care for him, is a factor that favors sentencing reduction). Accordingly, the Court finds that the Section 3553(a)(1) factor tilts in favor of sentencing reduction.

As to the Section 3553(a)(2) factor, the need for a sentence must be sufficient, but not greater than necessary, to serve the purpose of "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (citation and internal quotes omitted). Although Defendant's underlying criminal offenses are serious, he is a 77-year-old man who has already served 27 years in prison. Defendant's time in prison "has consumed a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offenses and the need for general or specific deterrence." *Parker*, 2020 WL 2572525, at *12 (citation and internal quotes omitted). This 27-year duration "is also a period of time that promotes respect for the law and provides just punishment for his offenses." *Id.*; *see also id.* at *9, 12 (holding that a 65-year-old defendant's 22 years in prison for leading a drug distribution network, abusing his law enforcement position, and submitting a false tax return adequately serves the purposes of sentencing). And as the Court already discussed above, Defendant has submitted evidence of his rehabilitation and demonstrates that he is no longer a danger to the public. (*See* ECF Nos. 1823-1, 1823-2, 1823-3.) Accordingly, the Court finds that there is no longer a need for the original sentence of life imprisonment.

On balance, the Court finds that the Section 3553(a) factors weigh in favor of releasing Defendant.

Finally, the government argues that, in the event this Court grants the Motion, the Court should: (1) direct the Defendant to be quarantined for a 14-day period before the release order takes effect; and (2) impose an additional lengthy period of supervised release requiring Defendant to be restricted to his residence at all times except for medical necessities and or other activities approved by U.S. Probation or the Court. (ECF No. 1828 at 22.) *See* 21 U.S.C. § 3553(a)(4). The Court rejects the government's first argument because Defendant has already been essentially quarantined in solitary confinement. As for the latter, the Judgment imposed a range of between three to five

years of supervised release on each count to run concurrently, along with conditions of supervised release. (ECF No. 1479 at 5.) The Court finds it appropriate to impose three years of supervised release on each count of conviction to be served concurrently given evidence of Defendant's rehabilitation as discussed *supra* and his advanced age. Moreover, these two factors along with changes in applicable laws or policies governing supervised release during the past 25 years warrant revisiting which conditions would be appropriate to impose

The following is the procedures for submission of recommended supervised release conditions. U.S. Probation will be given 30 days to provide the parties with its recommendations for supervised release conditions. The parties will have 14 days to resolve any objections. Thereafter, probation will submit a report to the Court as to its recommendations and any unresolved objections.

In the meantime, Defendant will be subject to the following supervised release conditions:

> Defendant will be placed on home confinement with location monitoring and the probation officer has discretion to determine the appropriate form of location monitoring. Defendant must follow the rules and regulations of the location monitoring program. Defendant is restricted to his residence at all times except for: medical appointments; attorney visits; court appearances; religious services; or other activities as pre-approved by the probation officer

Counsel for Defendant will ensure proper coordination with U.S. Probation to effectuate Defendant's placement on supervised release.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

///

///

///

It is therefore ordered that Defendant's motion for compassionate release (ECF No. 1823) is granted. Defendant will be subject to three years of supervised release as discussed herein.

DATED THIS 3rd day of June 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE